IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2019

**STATE OF TENNESSEE v. HELENA MOORE**

**Appeal from the Criminal Court for Roane County**
**No. 2015-CR-152        Jeffery Hill Wicks, Judge**

_____

**No. E2018-00709-CCA-R3-CD**

_____

The Appellant, Helena Moore, appeals the trial court's revocation of her community corrections sentence and order to serve her original two-year sentence in confinement, contending that she should have been returned to community corrections. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Ian McCabe, Knoxville, Tennessee, for the Appellant, Helena Moore.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Russell Johnson, District Attorney General; and Kristin Rudden Kelley, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On August 14, 2015, the Appellant pled guilty to theft of property valued more than $1,000 but less than $10,000, and she received a sentence of two years, which was suspended to probation. On November 29, 2016, the trial court entered an order revoking the Appellant's probation and ordering her to serve forty days in jail before serving the balance of her two-year sentence on community corrections. In connection with the order, a "Behavior Contract and Conditions of Sentence" was entered that reflects the

Appellant was convicted of "Theft X 2 ($1000.00 to 10,000.00)" and that she was "sentenced to serve a term of 4 years in the Department of Corrections." [1]

On April 7, 2017, a warrant was issued alleging that the Appellant violated the terms of her community corrections. At the revocation hearing, the parties stipulated that the Appellant had violated the terms of her community corrections.

Victor Owen, who was in charge of the Community Corrections Program, testified that on November 29, 2016, the Appellant began serving her community corrections sentence and that she first reported on December 6, 2016. Owen reviewed the rules and conditions of the community corrections sentence with the Appellant. He also warned her that the "worst thing" she could do was "abscond from" community corrections and that if she violated the terms of community corrections, she likely would go to prison.

On December 6, the Appellant failed a drug test by testing positive for opiates and morphine. Owen noted the Appellant had a prescription that could have accounted for the positive opiate finding. Nevertheless, during in-person meetings and telephone conversations Owen had with the Appellant during the month of December, the Appellant acknowledged that she had "messed up," that she "need[ed] help," and that she wanted to get into a drug treatment program. Owen told her that he would not object if she could get into a program on her own but cautioned that she would be required to complete the program as a condition of community corrections.

Thereafter, the Appellant voluntarily entered a residential rehabilitation program at "Serenity House." Around February 6, 2017, after successfully completing the Serenity House program, the Appellant entered a three-month "intensive outpatient" program at Hope of East Tennessee ("Hope House"), which was a halfway house for women. Owen noted that Serenity House was more restrictive than Hope House. He again informed the Appellant that she would be required to complete the program as a condition of community corrections. Owen thought that Hope House was a follow-up program to Serenity House but did not know if the Appellant went there at the recommendation of the staff at Serenity House.

On March 1, the Appellant tested positive for Buprenorphine. Three days later, the Hope House staff suspected the Appellant had used methamphetamine and requested that she submit to a drug test. She refused and was discharged from the facility later that day. On March 6, a Hope House staff member sent Owen a letter advising him of the Appellant's discharge, but Owen could not recall the date he received the letter.

---

[1] The form indicates that at some point, the Appellant was convicted of another theft charge, that a two-year sentence was imposed for the other theft conviction, and that the sentences for the theft convictions were to be served consecutively.

Owen said that the Appellant "abscond[ed]" from community corrections and had no contact with him for six months after her discharge from Hope House. He noted that an offender was considered to have "officially absconded" from community corrections if she failed to report for thirty days.

In September 2017, the Appellant was arrested for violating the terms of her community corrections sentence. Following her arrest, she sent Owen a letter from jail. She said that she did not report to community corrections after she was discharged from Hope House "because she was scared." Sometime later, Owen learned that the Appellant had been charged with theft and that the victim of the new charge was the same victim of the theft convictions for which the Appellant was on community corrections. The new charge was pending at the time of the revocation hearing.

Owen noted that when he initially met with the Appellant, he advised her that she was supposed to pay $100 per month toward costs, fines, and restitution. However, she had paid nothing since she began serving her 2016 community corrections sentence. He said that he was less concerned about her failure to pay while she was in the rehabilitation facilities than he was about her failure to pay during "the six months she absconded." Nevertheless, he noted that he had another client who was in Hope House around the same time as the Appellant and that the other client "actually did a good job on paying on her court costs and fines." Owen thought the Appellant was employed at a McDonald's restaurant for a brief time while she was at Hope House. Owen opined that the Appellant should serve the remainder of her sentence in confinement.

The State argued that the Appellant should be required to serve the balance of her sentence in confinement, noting that this was the second time she had unsuccessfully been released on alternative sentencing. The Appellant contended that as a drug addict, she was the type of offender community corrections was designed to help. The Appellant further contended that her violations were because she was a drug addict and that she voluntarily sought treatment in the Serenity House program. The Appellant asked that she be given another chance in community corrections.

The trial court agreed that community corrections was designed to keep non-violent felons out of prison. The court stated, however, that the Appellant had been given a chance in community corrections and that she did not comply with its requirements. The trial court noted that the Appellant failed to report for approximately six months and that she left the rehabilitation facility without informing Owen. The trial court further noted that the Appellant was arrested on a new charge while on community corrections. The court revoked the Appellant's community corrections sentence and ordered her to serve the balance of her sentence in confinement. On appeal, the Appellant challenges the trial court's ruling.

## II. Analysis

Generally, community corrections sentences are governed by the Tennessee Community Corrections Act of 1985. See Tenn. Code Ann. § 40-36-101. The Act provides as follows:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4). A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of her suspended sentence. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion. Id. An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

On appeal, the Appellant contends that the trial court abused its discretion by revoking her community corrections sentence and ordering that she serve her sentence in confinement because she demonstrated a desire to rehabilitate herself by voluntarily attending the program at Serenity House. However, the Appellant admitted at the revocation hearing, and she acknowledges on appeal, that she violated the terms of community corrections. Therefore, the trial court did not abuse its discretion by revoking her community corrections sentence and ordering that she serve her sentence in confinement.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____

NORMA MCGEE OGLE, JUDGE